FILED

1   ROBBINS GELLER RUDMAN
    & DOWD LLP
2   DARREN J. ROBBINS (168593)
    DAVID C. WALTON (167268)
3   655 West Broadway, Suite 1900
    San Diego, CA 92101-3301
4   Telephone: 619/231-1058
    619/231-7423 (fax)
5   darrenr@rgrdlaw.com
    davew@rgrdlaw.com
6       – and –
    SAMUEL H. RUDMAN
7   58 South Service Road, Suite 200
    Melville, NY 11747
8   Telephone: 631/367-7100
    631/367-1173 (fax)
9   srudman@rgrdlaw.com

2012 FEB -9 PM 3: 14

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____

10  Attorneys for Plaintiff

11  [Additional counsel appear on signature page.]

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                   SOUTHERN DIVISION

15  PAWEL I. KMIEC, Individually and on )   **VIA FAX**
    Behalf of All Others Similarly Situated, )
16                                        )   No. **SACV12-00222 CJC (JPRx)**
                            Plaintiff,    )
17                                        )   CLASS ACTION
            vs.                           )
18                                        )   COMPLAINT FOR VIOLATIONS OF
    POWERWAVE TECHNOLOGIES               )   THE FEDERAL SECURITIES LAWS
19  INC., RONALD J. BUSCHUR and          )
    KEVIN MICHAELS,                       )
20                                        )
                            Defendants.   )
21  _____ )   DEMAND FOR JURY TRIAL

22

23

24

25

26

27

28

## JURISDICTION AND VENUE

1.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act (15 U.S.C. §78aa).

3.      Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

4.      In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## NATURE OF THE ACTION

5.      This is a securities class action on behalf of all persons who purchased the common stock of Powerwave Technologies Inc. ("Powerwave" or the "Company") between February 1, 2011 and October 18, 2011, inclusive (the "Class Period"), against Powerwave and certain of its officers and/or directors for violations of the 1934 Act.

## PARTIES

6.      Plaintiff Pawel I. Kmiec purchased the common stock of Powerwave during the Class Period, as set forth in the certification accompanying this complaint and incorporated herein by reference, and has been damaged thereby.

7.      Defendant Powerwave engages in the design, manufacture, marketing, and sale of wireless solutions for wireless communications networks worldwide.

8.      Defendant Ronald J. Buschur ("Buschur") served as the Company's President and Chief Executive Officer during the Class Period.

9.      Defendant Kevin Michaels ("Michaels") served as the Company's Chief Financial Officer during the Class Period.

10.     Defendants Buschur and Michaels (collectively, the "Individual Defendants"), by virtue of their high-level positions with the Company, had access to adverse, undisclosed information about Powerwave's business, operations, financial statements, markets and present and future business prospects, via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof, and reports and other information was provided to them as part of their positions.

11.     By virtue of their high level positions with the Company, the Individual Defendants possessed the power and authority to control the contents of Powerwave's quarterly reports and other public filings, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each of the Individual Defendants, by virtue of their high level positions with Powerwave, directly participated in the management of the Company and was directly involved in the day-to-day operations of the Company.  The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, and were aware, or recklessly disregarded, that false and misleading statements regarding Powerwave were being issued, and approved or ratified these statements, in violation of the federal securities laws.

12.     As officers and controlling persons of a publicly-held company whose common stock was traded on the NASDAQ during the Class Period, and governed by the federal securities laws, each of the Individual Defendants had a duty to disseminate promptly accurate and truthful information regarding the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading

or untrue, so that the market price of Powerwave common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13.    Each of the defendants is liable as a participant in a fraudulent scheme and course of conduct that operated as a fraud or deceit upon purchasers of Powerwave common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Powerwave's business; (ii) artificially inflated the price of Powerwave common stock; and (iii) caused plaintiff and other members of the class to purchase Powerwave common stock at inflated prices.

## MATERIALLY FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

14.    Defendant Powerwave engages in the design, manufacture, marketing, and sale of wireless solutions for wireless communications networks worldwide. The company offers antennas, boosters, combiners, cabinets, shelters, filters, radio frequency power amplifiers, remote radio head transceivers, repeaters, tower-mounted amplifiers, and advanced coverage solutions for use in frequency bands, including cellular, PCS, 3G, and 4G wireless communications networks.

15.    The Class Period begins on February 1, 2011. On that date, Powerwave issued a press release announcing its financial results for its fourth quarter, the period ending January 2, 2011. For the quarter, the Company reported net sales of $175.6 million, compared to $142.6 million for the same period the prior year. Defendant Buschur commented on the results, stating, in pertinent part, as follows:

> For the fourth quarter of 2010, we were able to show growth of 23% over the same period last year and 12% sequentially over the third quarter of this year[.]  More importantly, we were able to continue our improvements in our operating income for this year, with the added

benefit of demonstrating strong profitability on both a GAAP and pro forma basis for the fourth quarter and year results. We continue to see signs of improvement in overall demand for wireless infrastructure equipment, driven globally by the continued increase in demand for smartphones and the requirements for faster data transmission rates. We are continuing to work to position Powerwave to capitalize on the long-term growth opportunities we believe are available within the global wireless infrastructure marketplace.

16.     Following the issuance of the press release, also on February 1, 2011, Powerwave held a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, Defendants Michaels and Buschur made positive statements about the Company and its operations.

17.     On May 5, 2011, Powerwave issued a press release announcing its financial results for its first quarter, the period ending April 3, 2011. For the quarter, the Company reported net sales of $136.6 million, compared to $114.5 million for the same period the prior year. Defendant Buschur commented on the results, stating, in pertinent part, as follows:

The first quarter revenue was impacted by delays we encountered ramping up one of our new LTE products[.]  We believe that we have resolved the production issues that impacted our revenues for the first quarter. Looking ahead for the remainder of this year, we continue to believe that we are on track for meeting our annual revenue guidance. There are signs of improving demand for global wireless infrastructure for the remainder of 2011. We believe that Powerwave is in an excellent position to build upon and capture the long-term growth opportunities that are in the wireless infrastructure marketplace.

18.     Following the issuance of the press release, on May 5, 2011, Powerwave held a conference call with analysts and investors to discuss the Company's earnings

1  and operations.  During the conference call, Defendants Michaels and Buschur made

2  positive statements about the Company and its operations.

3         19.    On July 12, 2011, Powerwave issued a press release to provide a "Second

4  Quarter Update."  The Company reported that for its second fiscal quarter, the period

5  ending July 3, 2011, it "anticipates that revenues for its fiscal second quarter ended

6  July 3, 2011 will be in the range of $168 million to $172 million.  This updates

7  Powerwave's previously announced expectations of revenues for the second quarter."

8  Defendant Buschur commented on the announcement, stating, in pertinent part, as

9  follows:

10        For the second quarter, in spite of some slowness in several of our

11        markets, we were able to increase revenues by over 24 percent from the

12        first quarter of this year and achieve the anticipated revenue range[.]

13        Looking ahead for the remainder of this year, we continue to believe that

14        we are on track for meeting the bottom range of our 2011 annual revenue

15        guidance of $650 million to $680 million.  We continue to believe that

16        Powerwave is in an excellent position to build upon and capture the

17        long-term growth opportunities that are in the wireless infrastructure

18        marketplace.

19        20.    Following this announcement, the price of Powerwave common stock

20  declined from $2.77 per share on July 11, 2011, to $2.10 per share on July 13, 2011, a

21  decline of 24%.  Defendants, however, continued to conceal the scope of the problems

22  facing the Company.

23        21.    On July 20, 2011, Powerwave issued a press release announcing that it

24  had entered into a purchase agreement to which it would issue an aggregate of $100

25  million of 2.75% Convertible Senior Subordinated Notes due 2014.

26        22.    On August 4, 2011, Powerwave issued a press release announcing its

27  financial results for its second quarter, the period ending July 3, 2011.  For the quarter,

28  the Company reported net sales of $170.6 million, compared to $144.6 million for the

- 5 -

1    same period the prior year.  Defendant Buschur commented on the results, stating, in

2    pertinent part, as follows:

3         For the second quarter, we were able to grow our revenues by 25%

4         sequentially from the first quarter of this year, and by 18% when

5         compared to the same period last year[.]  In addition, we were able to

6         show improvement in our gross margins during the quarter while

7         continuing to control our operating expenses, thereby driving strong

8         profitability on both a GAAP and pro forma basis for the second quarter.

9         While we are concerned about global macro economic issues, we

10        continue to believe that we have positioned Powerwave to be in an

11        excellent position from which to build upon and capture both the short-

12        term and long-term growth opportunities that are in the global wireless

13        infrastructure marketplace.

14        23.    Following the issuance of the press release, on August 4, 2011,

15   Powerwave held a conference call with analysts and investors to discuss the

16   Company's earnings and operations.  During the conference call, Defendants Michaels

17   and Buschur made positive statements about the Company and its operations.

18        24.    The statements referenced above in paragraphs 15-19, 22 and 23 were

19   each materially false and misleading when made as they failed to disclose the

20   following adverse facts, which were known to defendants or recklessly disregarded by

21   them:

22             (a)    that the Company was experiencing a dramatic decline in demand

23   from customers in its North American markets;

24             (b)    that the Company was rapidly burning through its free cash flow as

25   revenues declined and expenses increased; and

26             (c)    as a result of the foregoing, defendants lacked a reasonable basis

27   for their positive statements about the Company, its operations and earnings.

28

- 6 -

25.     On October 18, 2011, Powerwave issued a press release announcing that "it anticipates that revenues for its fiscal third quarter ended October 2, 2011 will be in the range of $75 million to $79 million."  Defendant Buschur commented on the announcement, stating, in pertinent part, as follows:

> Our third quarter revenues were impacted by several factors, which included a significant slowdown in spending by North American network operators, a significant reduction in activity with our original equipment manufacturing customers, coupled with further weakness in several international markets, including Western and Eastern Europe, and the Middle East[.]  From a global perspective, we believe that the current economic environment has caused operators to reduce or postpone their spending plans for the near term while they evaluate the macro-economic pressures in each individual market.  The Middle East market has been significantly impacted by the political unrest throughout the region.  In addition, in the North American market we believe that the uncertainty arising from the government's recent opposition to the proposed merger of AT&T and T-Mobile, has led to delays in spending as these operators re-evaluate their capital spending plans.  All of these factors, combined together, have had a significant impact on our third quarter revenues.  While near term visibility remains difficult in our markets, we continue to believe that the long-term demand for improvements in wireless infrastructure remain strong, as global demand for data continues and wireless network operators continue to promote their plans to improve existing coverage and add additional capacity, in the form of 4G capabilities, to wireless networks across the globe.  We believe that Powerwave remains positioned to build upon and capture the long-term growth opportunities that are in the wireless infrastructure marketplace.

26. Following the issuance of the press release, Powerwave held a conference call to discuss the announcement. During the conference call, Defendants Michaels and Buschur admitted that the Company was performing poorly and burning through a substantial amount of free cash.

27. In response to the announcement, on October 19, 2011, the price of Powerwave common stock declined from $1.46 per share to $0.85 per share, or 42%, on extremely heavy trading volume.

28. On October 28, 2011, Powerwave issued a press release announcing that its Board of Directors had approved a 1-for-5 reverse stock split and a reduction in the number of authorized shares of its common stock.

29. On November 1, 2011, Powerwave issued a press release announcing its financial results for its third fiscal quarter, the period ending October 2, 2011. The Company reported a net loss of $35.1 million, or a basic loss per share of $1.09. Defendant Buschur commented on the results, stating, in pertinent part, as follows:

> As we have previously reported, our third quarter revenues were impacted by several factors, which included significant slowdowns in several of our markets, including North America, Western and Eastern Europe and the Middle East, as well as our original equipment manufacturing customers[.] From a global perspective, we believe that the current economic environment has caused operators to reduce or postpone their spending plans for the near term while they evaluate the macro-economic pressures in each individual market. While near term visibility remains difficult in our markets, we continue to believe that the long-term demand for improvements in wireless infrastructure remain strong, as global demand for data continues and wireless network operators continue to promote their plans to improve existing coverage and add additional capacity, in the form of 4G capabilities, to wireless networks across the globe. We are currently finalizing our restructuring

1    plans in order to take the steps we believe necessary to maintain

2    Powerwave's competitive position and continue to position Powerwave

3    for long-term success.

4                                    **SCIENTER**

5        30.    As alleged herein, defendants acted with scienter in that defendants knew

6    that the public documents and statements issued or disseminated in the name of the

7    Company were materially false and misleading; knew that such statements or

8    documents would be issued or disseminated to the investing public; and knowingly

9    and substantially participated or acquiesced in the issuance or dissemination of such

10   statements or documents as primary violations of the federal securities laws.  As set

11   forth elsewhere herein in detail, defendants, by virtue of their receipt of information

12   reflecting the true facts regarding Powerwave, their control over, and/or receipt and/or

13   modification of Powerwave's allegedly materially misleading misstatements and/or

14   their associations with the Company, which made them privy to confidential

15   proprietary information concerning Powerwave, participated in the fraudulent scheme

16   alleged herein.

17                                **NO SAFE HARBOR**

18       31.    The statutory safe harbor provided for forward-looking statements under

19   certain circumstances does not apply to any of the allegedly false statements pleaded

20   in this Complaint.  Many of the specific statements pleaded herein were not "forward-

21   looking statements" when made.   To the extent there were any forward-looking

22   statements, they were not identified as such nor was there meaningful cautionary

23   statements identifying important factors that could cause actual results to differ

24   materially from those in the purportedly forward-looking statements given to

25   investors. Alternatively, to the extent that the statutory safe harbor does apply to any

26   forward-looking statements pleaded herein, defendants are liable for those false

27   forward-looking statements because at the time each of those forward-looking

28   statements was made, the particular speaker knew that the particular forward-looking

1   statement was false, or the forward-looking statement was authorized or approved by

2   an executive officer of Powerwave who knew that those statements were false when

3   made.

### FRAUD-ON-THE-MARKET PRESUMPTION

5        32.    Plaintiff will rely upon the presumption of reliance established by the

6   fraud-on-the-market doctrine.  This presumption provides, *inter alia*:

7           (a)    defendants made public misrepresentations or failed to disclose

8   material facts during the Class Period;

9           (b)    the omissions and misrepresentations were material;

10          (c)    the Company's securities traded in efficient markets;

11          (d)    the misrepresentations alleged would tend to induce a reasonable

12  investor to misjudge the value of the Company's securities; and

13          (e)    Plaintiff and other members of the Class purchased Powerwave

14  common stock between the time defendants misrepresented or failed to disclose

15  material facts and the time the true facts were disclosed, without knowledge of the

16  misrepresented or omitted facts.

17       33.    At all relevant times, the market for Powerwave common stock was

18  efficient for the following reasons, among others:

19          (a)    Powerwave common stock met the requirements for listing, and

20  was listed and actively traded during the Class Period, on the NASDAQ;

21          (b)    Powerwave common stock was regularly followed by securities

22  analysts employed by major brokerage firms who wrote reports that were distributed

23  to the sales force and customers of their respective brokerage firms; and

24          (c)    Powerwave regularly communicated with the public and investors

25  via established market communication mechanisms, including via regular

26  dissemination of press releases on major news wire services and through other wide-

27  ranging public disclosures, such as communications with the financial press, securities

28  analysts, and other similar reporting services.

34.   As a consequence, the markets for Powerwave common stock digested current information with respect to Powerwave from publicly available sources and reflected such information in the price of Powerwave common stock.  Under these circumstances, all purchasers or acquirers of Powerwave common stock during the Class Period suffered similar injury through their purchase of securities at artificially inflated prices and, thus, a presumption of reliance applies.

### PROXIMATE LOSS CAUSATION/ECONOMIC LOSS

35.   During the Class Period, as detailed herein, defendants engaged in a scheme to deceive investors and the market and a course of conduct that artificially inflated and maintained the price of Powerwave common stock and operated as a fraud or deceit on Class Period purchasers of the Company's publicly traded common stock by issuing false statements during the Class Period.   When defendants' misrepresentations and omissions were revealed, the price of Powerwave common stock fell precipitously as the prior artificial inflation was removed.  As a result of their purchases of Powerwave common stock during the Class Period, plaintiff and other members of the Class suffered significant economic loss, *i.e.*, damages, under the federal securities laws.

36.   Defendants' false statements and omissions had the intended effect and caused Powerwave stock to trade at artificially inflated levels.  As a direct result of the disclosures on July 12, 2011 and October 18, 2011, the price of Powerwave common stock suffered material, statistically significant declines.  These two drops removed the inflation from Powerwave's common stock price, causing real economic loss to investors who had purchased Powerwave common stock during the Class Period.

### CLASS ALLEGATIONS

37.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of purchasers and acquirers of Powerwave common stock during the Class Period (the "Class").  Excluded from the Class are the defendants, the officers and directors of the

1   Company, members of their immediate families and their legal representatives, heirs,

2   successors or assigns and any entity in which defendants have or had a controlling

3   interest.

4        38.    The members of the Class are so numerous that joinder of all members is

5   impracticable.  Throughout the Class Period, Powerwave common stock were actively

6   traded on the NASDAQ.  While the exact number of Class members is unknown to

7   plaintiff at this time and can only be ascertained through appropriate discovery,

8   plaintiff believes that there are thousands of members in the proposed Class.  Record

9   owners and other members of the Class may be identified from records maintained by

10   Powerwave or its transfer agent and may be notified of the pendency of this action by

11   mail, using the form of notice similar to that customarily used in securities class

12   actions.

13        39.    Plaintiff's claims are typical of the claims of the members of the Class as

14   all members of the Class were similarly affected by defendants' wrongful conduct in

15   violation of federal law that is complained of herein.

16        40.    Plaintiff will fairly and adequately protect the interests of the members of

17   the Class and has retained counsel competent and experienced in class and securities

18   litigation.

19        41.    Common questions of law and fact exist as to all members of the Class

20   and predominate over any questions solely affecting individual members of the Class.

21   Among the questions of law and fact common to the Class are:

22        (a)    whether the federal securities laws were violated by defendants'

23   acts and omissions as alleged herein;

24        (b)    whether statements made by defendants to the investing public

25   during the Class Period misrepresented and omitted material facts about the business

26   and operations of Powerwave; and

27        (c)    to what extent the members of the Class have sustained damages

28   and the proper measure of damages.

42.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### COUNT I

**Violation of §10(b) of the 1934 Act and Rule 10b-5
Promulgated Thereunder Against All Defendants**

43.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.   During the Class Period, defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were false.

45.   Defendants: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers or acquirers of the Company's publicly traded securities in an effort to maintain artificially high market prices for Powerwave common stock in violation of §10(b) of the 1934 Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46.   Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. As such, defendants' material misrepresentations and/or omissions were made knowingly or with a reckless disregard for the truth and for the

- 13 -

1    purpose and effect of supporting the artificially inflated prices of Powerwave common

2    stock.

3         47.    As a result of the dissemination of the materially false and misleading

4    information and failure to disclose material facts, as set forth above, the market price

5    of Powerwave common stock was artificially inflated during the Class Period.  In

6    ignorance of the fact that the market price of Powerwave's publicly traded securities

7    was artificially inflated, and relying directly or indirectly on the false and misleading

8    statements made by defendants, or upon the integrity of the markets in which the

9    securities trade and/or on the absence of material adverse information that was known

10   to or recklessly disregarded by defendants, but not disclosed in public statements by

11   defendants during the Class Period, plaintiff and the other members of the Class

12   acquired Powerwave common stock during the Class Period at artificially inflated

13   prices and were damaged when the artificial inflation came out of the price of the

14   stock.

15        48.    At the time of defendants' false and misleading statements, plaintiff and

16   other members of the Class were ignorant of their falsity and believed them to be true.

17   Had plaintiff, the other members of the Class and the marketplace known the truth

18   regarding Powerwave's operational condition, that was not disclosed by defendants,

19   they would not have purchased their Powerwave common stock, or, if they had

20   acquired such common stock during the Class Period, they would not have done so at

21   the artificially inflated prices they paid.

22        49.    As a direct and proximate result of defendants' wrongful conduct,

23   plaintiff and the other members of the Class suffered damages in connection with their

24   respective purchases and sales of the Company's common stock during the Class

25   Period.

26

27

28

- 14 -

## COUNT II

### Violation of §20(a) of the 1934 Act
### Against All Defendants

50.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.    Defendants acted as controlling persons of Powerwave within the meaning of §20(a) of the 1934 Act as alleged herein.  By virtue of their high level positions, participation in and awareness of the Company's operations, and intimate knowledge of the false statements made by Powerwave and disseminated to the investing public, defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements plaintiff contends are false.  The defendants participated in conference calls with investors and were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements, alleged by plaintiff to be misleading, prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.    In particular, each of the defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

53.    As set forth above, each of the defendants violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the defendants are liable pursuant to §20(a) of the 1934 Act.  As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of Powerwave common stock during the Class Period.

1

## PRAYER FOR RELIEF

2          WHEREFORE, plaintiff respectfully prays for relief and judgment, as follows:

3          A.     Determining that this action is a proper class action, and certifying

4   plaintiff as class representative under Federal Rule of Civil Procedure 23;

5          B.     Awarding compensatory damages in favor of plaintiff and the other

6   members of the Class against all defendants, jointly and severally, for all damages

7   sustained as a result of defendants' wrongdoing, in an amount to be proven at trial,

8   including interest thereon;

9          C.     Awarding plaintiff and the Class their reasonable costs and expenses

10  incurred in this action, including counsel fees and expert fees; and

11         D.     Such equitable, injunctive or other and further relief as the Court may

12  deem just and proper.

13

## JURY DEMAND

14         Plaintiff hereby demands a trial by jury.

15  DATED: February 9, 2012               ROBBINS GELLER RUDMAN
                                             & DOWD LLP
16                                         DARREN J. ROBBINS
                                           DAVID C. WALTON
17

18                                                DAVID C. WALTON

19                                         DAVID C. WALTON

20                                         655 West Broadway, Suite 1900
                                           San Diego, CA  92101-3301
21                                         Telephone:  619/231-1058
                                           619/231-7423 (fax)
22
                                           ROBBINS GELLER RUDMAN
23                                           & DOWD LLP
                                           SAMUEL H. RUDMAN
24                                         58 South Service Road, Suite 200
                                           Melville, NY  11747
25                                         Telephone:  631/367-7100
                                           631/367-1173 (fax)
26

27

28

- 16 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOLZER HOLZER & FISTEL LLC
MICHAEL I. FISTEL, JR.
200 Ashford Center North, Suite 300
Atlanta, GA  30338
Telephone:  770/392-0090
770/392-0029 (fax)

DYER & BERENS LLP
JEFFREY A. BERENS
303 East 17th Avenue, Suite 300
Denver, CO  80203
Telephone:  303/861-1764
303/395-0393 (fax)

Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt Powerwave.doc

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the complaint and authorized its filing.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost |
|---|---|---|---|
| PWAV | 8/12/2011 | 18,000 | $31,860.00 (or $ 1.77/share) |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds |
|---|---|---|---|
| PWAV | | | |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

1

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this  7  day of  February  2012 in  Sherman Oaks  ,  CA  .
                                                          City              State

(Signature) X  Pawel J. Kmiec

(Print Name)  PAWEL  I.  KMIEC

2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Cormac J. Carney  and the assigned discovery Magistrate Judge is Jean P. Rosenbluth.

The case number on all documents filed with the Court should read as follows:

## SACV12- 222 CJC (JPRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) PAWEL I. KMIEC, Individually and on Behalf of All Others Similarly Situated | DEFENDANTS POWERWAVE TECHNOLOGIES INC., RONALD J. BUSCHUR and KEVIN MICHAELS |
|---|---|
| Los Angeles County | |
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) David C. Walton Robbins Geller Rudman & Dowd LLP 655 West Broadway, Suite 1900, San Diego, CA 92101  619/231-1058 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No          ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. §§78j(b) and 78t(a)  Complaint for Violations of the Federal Securities Laws

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:    Case Number:    **SACV12-00222 CJC (JPRx)**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                                    CIVIL COVER SHEET                                    Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

\* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date February 9, 2012

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

Name & Address:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

PAWEL I. KMIEC, Individually and on Behalf of All
Others Similarly Situated,

PLAINTIFF(S)

v.

POWERWAVE TECHNOLOGIES INC., RONALD J.
BUSCHUR and KEVIN MICHAELS,

DEFENDANT(S).

CASE NUMBER

**SACV12-00222 CJC (JPRx)**

**SUMMONS**

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _David C. Walton_____, whose address is _Robbins Geller, et al., 655 W. Broadway, Ste. 1900, San Diego, CA 92101 619/231-1058_. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _Feb 9, 2012_____

By: **AMY DeAVILA**_____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*