ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
ELLEN GUSIKOFF STEWART (144892)
X. JAY ALVAREZ (134781)
ROBERT R. HENSSLER JR. (216165)
RYAN A. LLORENS (225196)
MATTHEW I. ALPERT (238024)
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
elleng@rgrdlaw.com
jaya@rgrdlaw.com
bhenssler@rgrdlaw.com
ryanl@rgrdlaw.com
malpert@rgrdlaw.com

Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| PAWEL I. KMIEC, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> POWERWAVE TECHNOLOGIES INC., et al., <br><br> Defendants. | No. 8:12-cv-00222-CJC(JPRx) <br><br> <u>CLASS ACTION</u> <br><br> LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS <br><br> DATE:    July 11, 2016 <br> TIME:    1:30 p.m. <br> CTRM:   9B <br> JUDGE:  Hon. Cormac J. Carney |

1135988_1

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT.................................................................1

II.   PROCEDURAL AND FACTUAL BACKGROUND...................................3

III.  THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS .................................................4

IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE .................................................................7

    A.   The Settlement Enjoys a Presumption of Reasonableness Because It Is the Product of Arm's-Length Settlement Negotiations .........................................................7

    B.   The Amount of the Settlement Provides a Favorable Recovery to the Class.................................................9

    C.   The Strength of Lead Plaintiff's Case, When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Approval of the Settlement.................................10

        1.   The Risks of Proving Falsity and Scienter ..............................12

        2.   The Risks of Proving Loss Causation and Damages...............14

        3.   Risks of Collectability of a Judgment ......................................15

    D.   The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement.................................16

    E.   Lead Plaintiff Had Sufficient Information to Determine the Propriety of Settlement .........................................17

    F.   The Recommendations of Experienced Counsel After Extensive Litigation and Arm's-Length Settlement Negotiations Favor the Approval of the Settlement .................................................18

    G.   Reaction of the Class Supports Approval of the Settlement ..............19

V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE...............20

VI.   CONCLUSION .................................................................21

1135988_1

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Beecher v. Able*,

5
575 F.2d 1010 (2d Cir. 1978) .................................................................. 20

6

*Brotherton v. Cleveland*,

7
141 F. Supp. 2d 894 (S.D. Ohio 2001) ...................................................... 19

8

*Bryant v. Avado Brands, Inc.*,

9
100 F. Supp. 2d 1368 (M.D. Ga. 2000), *rev'd on*
*other grounds and remanded sub nom.*

10
*Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001) ............................................ 11

11

*Carson v. Am. Brands, Inc.*,

12
450 U.S. 79 (1981) .............................................................................. 6

13

*Churchill Vill. L.L.C. v. GE*,

14
361 F.3d 566 (9th Cir. 2004) .................................................................. 5

15

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) ............................................................ 4, 20

16

17

*DeStefano v. Zynga*,
No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196

18
(N.D. Cal. Feb. 11, 2016) ........................................................... *passim*

19

*DSAM Glob. Value Fund v. Altris Software, Inc.*,

20
288 F.3d 385 (9th Cir. 2002) ................................................................ 12

21

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980),

22
*aff'd*, 661 F.2d 939 (9th Cir. 1981) ......................................................... 5, 17

23

*Glickenhaus & Co. v. Household Int'l, Inc.*,

24
787 F.3d 408 (7th Cir. 2015) ................................................................ 15

25

*Hanlon v. Chrysler Corp.*,

26
150 F.3d 1011 (9th Cir. 1998) ............................................................ 7, 19

27

28

- ii -

1

2                                                                                    **Page**

3
*In re Chicken Antitrust Litig. Am. Poultry,*
    669 F.2d 228 (5th Cir. 1982) ........................................................................ 20

*In re Flag Telecom Holdings,*
    No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702
    (S.D.N.Y. Nov. 8, 2010) ............................................................................... 11

*In re Gulf Oil/Cities Serv. Tender Offer Litig.,*
    142 F.R.D. 588 (S.D.N.Y. 1992) .................................................................. 20

*In re Heritage Bond Litig.,*
    No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13555
    (C.D. Cal. June 10, 2005) ........................................................................ 7, 21

*In re Ikon Office Sols., Inc.,*
    194 F.R.D. 166 (E.D. Pa. 2000) .............................................................. 11, 16

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ............................................................. 9, 17, 18

*In re Omnivision Techs.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................. *passim*

*In re Pac. Enters. Sec. Litig.,*
    47 F.3d 373 (9th Cir. 1995) ............................................................................ 5

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,*
    460 F.3d 1217 (9th Cir. 2006) ........................................................................ 4

*In re Portal Software, Inc. Sec. Litig.,*
    No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886
    (N.D. Cal. Nov. 26, 2007) ............................................................................ 21

*In re Rite Aid Corp. Sec. Litig.,*
    396 F.3d 294 (3d Cir. 2005) ......................................................................... 20

*In re Syncor ERISA Litig.,*
    516 F.3d 1095 (9th Cir. 2008) .................................................................... 4, 5

1135988_1

1
2                                                                           **Page**
3
*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................. 13

*In re Tyco Int'l, Ltd.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ................................................................ 14

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
    No. MDL C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541
    (N.D. Cal. Aug. 2, 2011) .................................................................................. 7

*Linney v. Cellular Alaska P'ship*,
    No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300
    (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ........................ 7

*Marshall v. Holiday Magic, Inc.*,
    550 F.2d 1173 (9th Cir. 1977) ........................................................................... 5

*McGonigle v. Combs*,
    968 F.2d 810 (9th Cir. 1992) ........................................................................... 12

*Milstein v. Huck*,
    600 F. Supp. 254 (E.D.N.Y. 1984) ................................................................. 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ......................................................... 7, 9, 11, 18

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...................................................................*passim*

*Redwen v. Sino Clean Energy, Inc.*,
    No. CV 11-3936 PA, 2013 U.S. Dist. LEXIS 100275
    (C.D. Cal. July 9, 2013) .................................................................................. 11

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ........................................................................... 17

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................... 6, 8, 18

1135988_1

1

2                                                                              **Page**

3

*Thacker v. Chesapeake Appalachia, L.L.C.*,
4       695 F. Supp. 2d 521 (E.D. Ky. 2010), *aff'd sub nom.*
5       *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
        636 F.3d 235 (6th Cir. 2011) ................................................................ 20
6

7   *Torrisi v. Tucson Elec. Power Co.*,
        8 F.3d 1370 (9th Cir. 1993) ........................................................... 5, 15
8

    *Util. Reform Project v. Bonneville Power Admin.*,
9       869 F.2d 437 (9th Cir. 1989) ................................................................ 4

10
    *Van Bronkhorst v. Safeco Corp.*,
11      529 F.2d 943 (9th Cir. 1976) ................................................................ 4

12  *Weeks v. Kellogg Co.*,
13      No. CV 09-08102 (MMM) (RZX), 2011 U.S. Dist. LEXIS 155472
        (C.D. Cal. Nov. 23, 2011) .................................................................. 10
14
    *White v. NFL*,
15      822 F. Supp. 1389 (D. Minn. 1993) .................................................... 20

16
    *Woo v. Home Loan Grp., L.P.*,
17      No. 07-CV-202 H (POR), 2008 U.S. Dist. LEXIS 65144
18      (S.D. Cal. Aug. 25, 2008) .................................................................... 5

19  **STATUTES, RULES AND REGULATIONS**

20  15 U.S.C.
21      §78j(b) ............................................................................................ 12
        §78t(a) ............................................................................................. 12
22      §78u-4(a)(4) ...................................................................................... 1

23
    Federal Rules of Civil Procedure
24      Rule 1 ............................................................................................... 4
        Rule 23 ............................................................................................ 20
25      Rule 23(a) .......................................................................................... 4
        Rule 23(b)(3) ...................................................................................... 4
26      Rule 23(e) ...................................................................................... 1, 4
27      Rule 23(e)(2) ...................................................................................... 4

28

1

2                                                                                    **Page**

3

17 C.F.R.
    §240.10b-5 ........................................................................................ 12

**SECONDARY AUTHORITIES**

2 Herbert Newberg & Alba Conte,
*Newberg on Class Actions* (3d ed. 1992)
    §11.48 .............................................................................................. 20

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
*Securities Class Action Settlements: 2015 Review and Analysis*
(Cornerstone Research 2016) ............................................................ 9, 10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1135988_1

## I.      PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff, the Government of Bermuda Contributory and Public Service Superannuation Pension Plans ("Bermuda" or "Lead Plaintiff"), submits this memorandum in support of its motion for final approval of the settlement of this securities class action for $8,200,000 in cash, and for approval of the Plan of Allocation of settlement proceeds. The terms of the settlement are set forth in the Stipulation of Settlement, dated October 30, 2015 ("Stipulation"), which was previously filed with the Court.[1] Dkt. No. 196.

This settlement represents an excellent recovery for the Class, particularly in light of Powerwave Technologies, Inc.'s ("Powerwave" or the "Company') bankruptcy filing during the course of the Litigation and the considerable expense, delay, and risks posed by continued litigation, including successfully opposing summary judgment, prevailing at trial, and litigating inevitable post-trial motions and appeals.  As discussed below and in the accompanying Declaration of Robert R. Henssler Jr. in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Reimbursement of Lead Plaintiff's Time Pursuant to 15 U.S.C. §78u-4(a)(4) ("Henssler Decl."), this Litigation did not settle until the parties completed fact discovery and had exchanged expert reports.

During this aggressively litigated action, Lead Counsel drafted a number of amended complaints, opposed Defendants' motions to dismiss those complaints and successfully defeated Defendants' motion for judgment on the pleadings in connection with the Court's order upholding the Second Amended Consolidated Complaint for Violations of the Federal Securities Laws (the "SAC"), fully briefed its motion for class certification, deposed more than 20 fact witnesses, defended depositions in connection

---

[1]   All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation.

with the class certification motion, reviewed and analyzed millions of documents produced by Powerwave's bankruptcy trustee and other third parties, litigated a number of discovery disputes, and mediated a resolution of the case with the assistance of the Honorable Layn R. Phillips (Ret.), a former federal district judge and experienced mediator. *See generally* Henssler Decl. Therefore, Lead Plaintiff and Lead Counsel were well informed to conclude that the significant risks involved in taking this Litigation further and through trial, when measured against the immediate benefit of the settlement, justify approval of this settlement.[2]

The settlement is also fully supported by the Lead Plaintiff – a large, sophisticated institutional investor of the type favored by Congress when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Bermuda has closely monitored and participated in this Litigation, including sitting for a deposition, responding to discovery, and supervising the negotiations leading to the resolution of the Litigation, and recommends that the settlement be approved. *See* Declaration of Michael C. Simmons of the Government of Bermuda Contributory and Public Service Superannuation Pension Plans ("Bermuda Decl."), ¶¶3-4. Further, Lead Counsel, a firm with extensive experience in prosecuting securities class actions, strongly believes that the settlement is an outstanding result and in the best interests of the Class. Henssler Decl., ¶153.

The Notice Order directed that a Settlement Hearing be held on July 11, 2016, to determine the fairness, reasonableness, and adequacy of the settlement and the Plan of Allocation of settlement proceeds. In accordance with the Notice Order, the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), and the Proof of Claim and Release form ("Proof of Claim") were mailed to potential Class Members and nominees, and as of April 12, 2016, over 25,200 copies have been mailed. *See*

---

[2]   This Court's December 4, 2015 Order Granting Preliminary Approval of Class Action Settlement (the "Notice Order") (Dkt. No. 198), held that "the benefits provided to the proposed settlement class appropriately balance the risks of continued litigation." *Id.* at 10.

- 2 -

1135988_1

1   Declaration of Carole K. Sylvester Regarding (A) Mailing of the Notice of Pendency
2   and Proposed Settlement of Class Action and the Proof of Claim and Release Form,
3   (B) Internet Posting, (C) Publication of the Summary Notice, and (D) Requests for
4   Exclusion Received to Date ("Sylvester Decl."), ¶¶4-11, submitted herewith.  In
5   addition, the Notice, the Proof of Claim, the Stipulation and its Exhibits, and the
6   Notice Order were posted on the settlement website, and pursuant to the Notice Order,
7   a Summary Notice was published in *Investor's Business Daily* and transmitted over
8   the *Business Wire* on February 5, 2016.  *Id.*, ¶¶13-15.

9          Class Members appear to support the settlement and Plan of Allocation.  While
10  the deadline for objecting is May 2, 2016, to date not a single Class Member has
11  objected to any aspect of the settlement or Plan of Allocation.[3]  Nor have any Class
12  Members sought exclusion from the Class.

13         In light of their informed assessment of the strengths and weaknesses of the
14  claims and defenses asserted, the considerable risks and delays associated with
15  continued litigation and trial, and the favorable settlement amount, Lead Plaintiff and
16  Lead Counsel believe that the settlement is eminently fair, reasonable, and adequate
17  and provides a very good result for the Class.  Accordingly, Lead Plaintiff respectfully
18  requests that the Court approve this settlement.  Moreover, the Plan of Allocation,
19  which was developed with the assistance of Lead Plaintiff's damages expert, is fair
20  and reasonable and, therefore, should also be approved by the Court.

21  **II.    PROCEDURAL AND FACTUAL BACKGROUND**

22         The Court is respectfully referred to the Henssler Declaration for a full
23  recitation of Lead Plaintiff's allegations, the entire litigation history, Lead Counsel's
24  efforts on behalf of the Class, the risks of further litigation, and the substantial benefits
25  obtained by this settlement.

26

27  ───────────────
[3]    Should any objections be received, Lead Plaintiff will address them in its reply
28  memorandum due July 1, 2016.

- 3 -

1135988_1

III.   **THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS**[4]

A class action settlement should be approved if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The authority to grant such approval lies within the sound discretion of the reviewing court. *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). In exercising its discretion, however, the reviewing court must be mindful of the "strong judicial policy that favors settlements." *Id.* In particular, it is well-established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits."). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.

It is beyond question that "the public has an overriding interest in securing 'the just, speedy, and inexpensive determination of every action.'" *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006);[5] Fed. R. Civ. P. 1. It is also beyond question that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). In deciding whether to approve a proposed settlement of a class action under Federal Rule of Civil Procedure 23(e), the court must first "hold a hearing and review the settlement

---

[4]   The Notice Order contained a full analysis of the Rule 23(a) and (b)(3) requirements for class certification, and found that each of the required elements were met. There have been no circumstances or events to undermine those findings; therefore, the Court is requested to incorporate those findings and finally certify the Class for settlement purposes.

[5]   Citations are omitted throughout unless otherwise indicated.

agreement to determine if it is fair, reasonable, and adequate."[6]  The Ninth Circuit has provided certain factors which may be considered in evaluating whether a settlement meets this standard:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625; *accord Churchill Vill. L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Woo v. Home Loan Grp., L.P.*, No. 07-CV-202 H (POR), 2008 U.S. Dist. LEXIS 65144, at *8 (S.D. Cal. Aug. 25, 2008). "'The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.'"  *Woo*, 2008 U.S. Dist. LEXIS 65144, at *8 (quoting *Officers for Justice*, 688 F.2d at 625).

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *accord Torrisi*, 8 F.3d at 1375.  In exercising its discretion,

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to

---

[6]  *Syncor*, 516 F. 3d at 1097; *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995); *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

1135988_1

1    the extent necessary to reach a reasoned judgment that the agreement is
2    not the product of fraud or overreaching by, or collusion between, the
3    negotiating parties, and that the settlement, taken as a whole, is fair,
4    reasonable and adequate to all concerned.

5    *Officers for Justice*, 688 F.2d at 625.  The Ninth Circuit "has long deferred to the
6    private consensual decision of the parties."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d
7    948, 965 (9th Cir. 2009).  The Ninth Circuit defines the limits of the inquiry to be
8    made by the court in the following manner:

9    [T]he settlement or fairness hearing is not to be turned into a trial or
10   rehearsal for trial on the merits.  Neither the trial court nor this court is to
11   reach any ultimate conclusions on the contested issues of fact and law
12   which underlie the merits of the dispute, for it is the very uncertainty of
13   outcome in litigation and avoidance of wasteful and expensive litigation
14   that induce consensual settlements.  The proposed settlement is not to be
15   judged against a hypothetical or speculative measure of what ***might*** have
16   been achieved by the negotiators.

17   *Officers for Justice*, 688 F.2d at 625 (emphasis in original).

18   In reviewing a settlement, a court is not to rewrite the settlement agreement
19   reached by the parties or to try the case by resolving issues intentionally left
20   unresolved.  *See, e.g.*, *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)
21   ("Courts judge the fairness of a proposed compromise by weighing the plaintiff's
22   likelihood of success on the merits against the amount and form of the relief offered in
23   the settlement.  They do not decide the merits of the case or resolve unsettled legal
24   questions.").  Therefore, courts have taken a flexible approach toward approval of
25   class action settlements, recognizing that the settlement process involves the exercise
26   of judgment and that the concept of "reasonableness" can encompass a broad range of
27   results.  "'In most situations, unless the settlement is clearly inadequate, its acceptance
28   and approval are preferable to lengthy and expensive litigation with uncertain

- 6 -

results.'"  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  "As the Ninth Circuit has noted, 'Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion.'"  *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. MDL C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541, at *11 (N.D. Cal. Aug. 2, 2011) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998)).

When examined under the applicable criteria, this settlement is an excellent result for the Class.  Lead Counsel believes that there are serious questions as to whether a more favorable monetary result could be attained after summary judgment, trial, and the inevitable post-trial motions and appeals.  The settlement achieves a substantial and certain recovery for the Class and is superior to the possibility that were the Litigation to proceed to trial, there could be no recovery at all.  Here, it is the considered judgment of highly experienced counsel after extensive hard-fought litigation and settlement negotiations that the settlement is not only a very good result for the Class but likely the best result under the circumstances and should be approved.  As discussed below, an analysis of the relevant factors demonstrates that the settlement merits this Court's final approval.

## IV.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.  The Settlement Enjoys a Presumption of Reasonableness Because It Is the Product of Arm's-Length Settlement Negotiations

"A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced counsel after meaningful discovery.'"  *In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. June 10, 2005); *see also Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ("the fact that the settlement agreement was reached in

arm's length negotiations, after relevant discovery [has] taken place create[s] a presumption that the agreement is fair").  Further, the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement.  *Rodriguez*, 563 F.3d at 965.  This settlement is entitled to the presumption.  It was reached only after full-blown pre-trial proceedings and arm's-length negotiations by experienced counsel on both sides, each with a well-developed understanding of the strengths and weaknesses of each party's respective claims and defenses.  As detailed in the Henssler Declaration, the parties began settlement negotiations in the spring of 2015, and retained Judge Phillips to assist them.  Henssler Decl., ¶132.  The parties provided Judge Phillips with extensive mediation briefs, and held an in-person meeting in March 2015.  While the parties negotiated in good faith at the mediation, they were unable to reach a resolution.  *Id.* As a result, the parties continued to vigorously litigate the case.

In late August and early September 2015, as the parties were preparing to exchange expert reports and schedule expert depositions, they again discussed informally mediating with Judge Phillips.  *Id.*, ¶133.  Judge Phillips provided the parties with a mediator's recommendation to resolve the litigation for $8.2 million, and each party accepted the recommendation.  *Id.*, ¶134.

Lead Counsel has many years of experience in litigating securities class actions and has negotiated hundreds of settlements of these types of cases, which settlements have been approved by courts across the country.  *See, e.g.*, Declaration of Robert R. Henssler Jr. Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), Ex. H; www.rgrdlaw.com.  Defendants are also represented by highly capable and experienced lawyers from O'Melveny & Myers LLP who zealously represented their clients.  The settlement was reached after arm's-length negotiations by experienced counsel on both sides, each with a well-developed understanding of each party's respective claims and defenses.  These facts established that the settlement is the result

- 8 -

1   of hard-fought, arm's-length negotiations and is "not the product of fraud or

2   overreaching by, or collusion between, the negotiating parties." *Officers for Justice*,

3   688 F.2d at 625.

4   **B.     The Amount of the Settlement Provides a Favorable Recovery to the Class**

5

6       The determination of a "reasonable" settlement is not susceptible to a

7   mathematical equation yielding a particularized sum. *In re Mego Fin. Corp. Sec.

8   Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). "'Naturally, the agreement reached

9   normally embodies a compromise; in exchange for the saving of cost and elimination

10  of risk, the parties each give up something they might have won had they proceeded

11  with litigation. . . .'" *Officers for Justice*, 688 F.2d at 624. "When considering the

12  fairness and adequacy of the amount offered in settlement, it 'is the complete package

13  taken as a whole, rather than the individual component parts, that must be examined

14  for overall fairness.'" *DeStefano v. Zynga*, No. 12-cv-04007-JSC, 2016 U.S. Dist.

15  LEXIS 17196, at *37 (N.D. Cal. Feb. 11, 2016) (quoting *DIRECTV*, 221 F.R.D. at

16  527). "[I]t is well-settled law that a proposed settlement may be acceptable even

17  though it amounts to only a fraction of the potential recovery that might be available

18  to the class members at trial." *DIRECTV*, 221 F.R.D. at 527; *Zynga*, 2016 U.S. Dist.

19  LEXIS 17196, at *37 (same).

20      Here, the result achieved is substantial. The Class will receive $8.2 million,

21  less Court-awarded fees and expenses and the costs of notice and administering the

22  settlement. This recovery provides an immediate, tangible and significant benefit to

23  the Class and eliminates the significant risk that the Class could recover less than the

24  Settlement Amount, or nothing at all, if the Litigation continued. Importantly, this

25  recovery far exceeds the median securities settlement as a percentage of estimated

26  damages. Specifically, the settlement here represents approximately 13% of the

27  Class' maximum recoverable damages as estimated by Lead Plaintiff's damages

28  expert, which greatly exceeds the median of 1.8% obtained in 2015. *See* Laarni T.

- 9 -

Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2015
Review and Analysis* at 8, Figure 7 (Cornerstone Research 2016).   The median
settlement as a percentage of estimated damages in the Ninth Circuit was 2.3% from
2006 through 2015.  *Id.* at 22, Figure 21.  *See Zynga*, 2016 U.S. Dist. LEXIS 17196, at
38 (approving settlement representing approximately 14% of likely recoverable
aggregate damages at trial); *Weeks v. Kellogg Co.*, No. CV 09-08102 (MMM) (RZX),
2011 U.S. Dist. LEXIS 155472, at *53-*55 & n.85 (C.D. Cal. Nov. 23, 2011)
(approving "settlement amount [of] approximately 10 percent of th[e] total damages
figure" because "[e]stimates of what constitutes a fair settlement figure are tempered
by factors such as the risk of losing at trial, the expense of litigating the case, and the
expected delay in recovery (often measured in years)"); *Omnivision*, 559 F. Supp. 2d
at 1042 (approving a settlement representing 6% of potential damages).

Had this litigation proceeded, there was a real possibility that the Class would
recover a smaller amount – or nothing at all after protracted litigation.  In addition to
the risk that Lead Plaintiff could lose at summary judgment or trial is the real risk that
given Powerwave's bankruptcy, the limited insurance policy was the only sources of
recovery, and continued litigation would deplete those available funds.  Accordingly,
this factor weighs heavily in favor of the settlement.

## C.   The Strength of Lead Plaintiff's Case, When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Approval of the Settlement

To determine whether a proposed settlement is fair, reasonable, and adequate,
the Court should balance against the continuing risks of litigation, the benefits
afforded to the Class and the immediacy and certainty of a substantial recovery.
*Zynga*, 2016 U.S. Dist. LEXIS 17196, at *29.  In other words,

[t]he Court shall consider the vagaries of litigation and compare the
significance of immediate recovery by way of the compromise to the
mere possibility of relief in the future, after protracted and expensive

- 10 -

1135988_1

1    litigation.  In this respect, "It has been held proper to take the bird in

2    hand instead of a prospective flock in the bush."

3  *DIRECTV*, 221 F.R.D. at 526.

4         In the context of approving class action settlements, "[c]ourts experienced with

5  securities fraud litigation, 'routinely recognize that securities class actions present

6  hurdles to proving liability that are difficult for plaintiffs to clear.'" *Redwen v. Sino*

7  *Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275, at

8  *19 (C.D. Cal. July 9, 2013) (quoting *In re Flag Telecom Holdings*, No. 02-CV-3400

9  (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *48 (S.D.N.Y. Nov. 8, 2010)).  This

10 is even more so today in this post-PSLRA environment amid defendants' constant

11 attempts to push the envelope and contours of the PSLRA.  *In re Ikon Office Sols.,*

12 *Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more

13 difficult from a plaintiff's perspective in the wake of the PSLRA").  As one court

14 noted: "An unfortunate byproduct of the PSLRA is that potentially meritorious suits

15 will be short-circuited by the heightened pleading standard." *Bryant v. Avado Brands,*

16 *Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds and*

17 *remanded sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

18        While Lead Counsel believes that the Litigation has significant merit, it

19 recognizes that Lead Plaintiff faced numerous risks and uncertainties and was well

20 aware that many other similar actions have been prosecuted in the belief that they

21 were meritorious, only to lose on dispositive motions, at trial, or on appeal.  As

22 discussed herein and in the Henssler Declaration, the risks of continued litigation,

23 when weighed against the substantial and certain recovery for the Class, confirms the

24 reasonableness of the settlement. *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *35 (given

25 risks of proceeding with litigation, "it is reasonable for Lead Plaintiff to decide that

26 the guarantee of an immediate recovery outweighs the uncertainties of pursuing a

27 possibly more favorable outcome by continuing to litigate.  These factors therefore

28 weigh in favor of approval.").

- 11 -

1135988_1

### 1.    The Risks of Proving Falsity and Scienter

Although Lead Plaintiff eventually survived Defendants' attacks on the pleadings, at trial it faced serious obstacles to recovery, both with respect to liability and damages.  The claims asserted in the Litigation on behalf of the Class were based on §§10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated by the U.S. Securities and Exchange Commission.  To prevail on its §10(b) claims, Lead Plaintiff bears the burden of proving: (a) a misstatement or omission, (b) of material fact, (c) made with scienter, (d) on which plaintiffs relied, and (e) that caused loss. *McGonigle v. Combs*, 968 F.2d 810, 817 (9th Cir. 1992); *DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 388 (9th Cir. 2002). Thus, Lead Plaintiff would have to prove that Defendants were responsible for material misstatements or omissions of fact, that the Class relied upon those statements, that Defendants acted with the requisite scienter, and that the Class suffered damages as a result of Defendants' conduct.

After nearly four years of litigation, searching through millions of pages of documents, conducting witness interviews, and taking or defending more than 20 fact and expert depositions, Lead Plaintiff believes it had developed sufficient evidence to succeed at summary judgment and trial against Defendants.  But, as detailed in the Henssler Declaration, this Litigation involves substantial risks in proving liability and damages.  Indeed, Defendants' arguments in motions and settlement negotiations made it clear that the parties held in many cases opposite views of the factual and legal issues presented, many of which would have been the subject of expert testimony.  Under these circumstances, there was certainly no guarantee that the jury would find in Lead Plaintiff's favor.  Lead Plaintiff carefully considered these risks during settlement negotiations with Defendants.

Even before settlement discussions commenced, it was very clear that Defendants did not agree that Lead Plaintiff would prevail on any of its claims, particularly with respect to falsity and scienter.  They also challenged the amount of

- 12 -

1   damages recoverable by the Class.  Thus, there is no question that Defendants would

2   have raised every available argument to avoid an adverse judgment had litigation

3   continued.  The defenses raised by Defendants certainly had the possibility of success,

4   making the ultimate outcome difficult to predict.

5         For example, Defendants vigorously contended that there was no evidence that

6   Powerwave improperly recognized revenue on any order with Team Alliance ("TA"),

7   its biggest reseller, or with any other reseller/customer during the Class Period.

8   Henssler Decl., ¶¶142-143.  Defendants further argued that: (i) there was no proof of

9   any unwritten side-agreements between Powerwave and TA regarding bulk orders and

10  the return of unwanted or unsalable product in a subsequent quarter; (ii) Powerwave's

11  independent auditor never found any evidence that undermined the application of the

12  Company's revenue recognition practices; (iii) Powerwave never restated (or was

13  advised by its auditor to restate) its financial statements during the Class Period; and

14  (iv) there was no evidence that Defendants' revenue forecasts or public statements

15  regarding demand for Powerwave products were materially false or misleading.  *Id.*,

16  ¶143.  Therefore, Lead Plaintiff's success in establishing falsity and materiality was

17  certainly not guaranteed.

18        Lead Plaintiff also faced a significant challenge in establishing scienter, as

19  proving a defendant's state of mind is difficult in any circumstance.  *See In re Telik,*

20  *Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008).  Defendants here would

21  argue that there was no evidence that either of the Defendants knew (or were reckless

22  in not knowing) about any alleged improper revenue recognition practices at

23  Powerwave or any unwritten side deals with resellers/customers that would have

24  contradicted their statements about revenue recognition.  Henssler Decl., ¶145.

25  Defendants would also likely have argued that there was no evidence (direct or

26  circumstantial) that demonstrated that either of the Defendants knowingly or

27  recklessly misled investors in connection with revenue forecasts or statements about

28  demand for Powerwave's products during the Class Period.  *Id.*  Defendants would

- 13 -

1  cite to Defendants' deposition testimony which denied any knowledge of fraud or
2  potential fraud, and to the exculpatory deposition testimony of former Powerwave
3  employees and witnesses from TA and Deloitte & Touche, LLP concerning any
4  fraudulent practices at Powerwave during the Class Period.  *Id.*

5       Lead Plaintiff could not be certain that a jury would see through the complexity
6  of the underlying facts to the heart of the alleged fraud.  These specific risks would be
7  exacerbated by the risks inherent in all shareholder litigation, including the
8  unpredictability of a lengthy and complex jury trial, the risk that witnesses could be
9  unavailable or jurors could react to the evidence in unforeseen ways, the risk that a
10  jury would find that some or all of the alleged misrepresentations were not material,
11  and the risk that the jury could find that Defendants believed in the appropriateness of
12  their actions at the time.

13                **2.      The Risks of Proving Loss Causation and Damages**

14       Lead Plaintiff also faced substantial risk in proving loss causation and damages.
15  *See, e.g.*, *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) ("Proving loss
16  causation would be complex and difficult.").   In addition to proving falsity and
17  scienter, in order to prevail on its §10(b) claims, Lead Plaintiff would be required to
18  prove that Defendants' allegedly false and misleading statements and omissions
19  inflated the price of Powerwave stock and the amount of the artificial inflation.

20       Throughout this case Defendants and their expert argued that Lead Plaintiff
21  could not prove loss causation or damages for either the July 12 or October 18, 2011
22  disclosure announcements.  Henssler Decl., ¶146 n.7.  If the argument that non-
23  Company-specific market forces negatively impacted Powerwave's stock price, as
24  opposed to the alleged corrective disclosures, was accepted by the Court at summary
25  judgment or a jury at trial, the potential to significantly decrease damages was very
26  real.

27       Moreover, even if Lead Plaintiff established significant damages at trial,
28  Defendants would likely insist on a lengthy and adversarial claims process, which

- 14 -

1   could take years and require significant time and expense from all parties, including

2   absent Class Members.   Moreover, any judgment would likely be followed by a

3   lengthy appeal, which could add years to the Litigation and further risk.  For instance,

4   in *Household*, a large securities class action case filed in 2002 in which Robbins

5   Geller Rudman & Dowd is serving as lead counsel, plaintiffs obtained a jury verdict

6   and judgment in their favor on May 7, 2009 after a month-long trial and years of

7   costly and contentious litigation.   *Jaffe v. Household Int'l, Inc.*, No. 1:02cv05893

8   (N.D. Ill.) (Dkt. No. 1611).  The judgment was overturned on appeal and a retrial on

9   certain issues will take place in June 2016.  *See Glickenhaus & Co. v. Household Int'l,*

10  *Inc.*, 787 F.3d 408 (7th Cir. 2015).

11       In the end, proof of damages is a complex matter that requires the presentation

12  of expert testimony.  While Lead Counsel believes that reliable and convincing expert

13  testimony can be provided on the damages question, and that a judgment could

14  ultimately be obtained for the full amount of damages available under the law, as

15  discussed above, meaningful obstacles remain.  As a result, this factor also weighs in

16  favor of the settlement.

17              **3.       Risks of Collectability of a Judgment**

18       Significantly, even if Lead Plaintiff was able to successfully prosecute this

19  action through trial, post-trial motions and all appeals, there was no guarantee that a

20  jury's verdict would have been more than the $8.2 million Settlement Amount, and it

21  would have taken years before all appeals were settled for the Class to receive any

22  payment.  In fact, there was no guarantee that even had Lead Plaintiff obtained a

23  significant judgment that withstood appeals, at the end of the day, the Class would

24  have been able to recover on such judgment because of Powerwave's bankruptcy and

25  the depleting insurance policy proceeds.   The Ninth Circuit has recognized

26  specifically that this circumstance strongly favors the settlement – "one factor [the

27  company's financial condition] predominates to make clear that the district court acted

28  within its discretion."  *Torrisi*, 8 F.3d at 1376.

- 15 -

**D.    The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement**

The immediacy and certainty of a recovery is a factor for the Court to balance in determining whether this proposed settlement is fair, adequate, and reasonable. Courts consistently have held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Officers for Justice*, 688 F.2d at 626.

As noted above, Defendants have demonstrated a commitment to defend this case through and beyond trial, if necessary, and are represented by well-respected and highly capable counsel from O'Melveny & Myers LLP.  If not for this settlement, the expense and time of continued litigation would have been substantial.  As the court noted in *Ikon*, which is applicable here:

> In the absence of a settlement, this matter will likely extend for . . . years longer with significant financial expenditures by both defendants and plaintiffs.  This is partly due to the inherently complicated nature of large class actions alleging securities fraud: there are literally thousands of shareholders, and any trial on these claims would rely heavily on the development of a paper trial [sic] through numerous public and private documents.

194 F.R.D. at 179.

If this Litigation were to continue to be litigated, Lead Plaintiff's motion for class certification would be heard and decided, Defendants' motions for summary judgment and motion to exclude Lead Plaintiff's experts' testimony would have to be briefed and argued, a pre-trial order would have to be prepared, proposed jury instructions would have to be submitted, and motions *in limine* would have to be filed and argued.  Substantial time and expense would need to be incurred in preparing the case for trial.  The trial itself would have been long, expensive, and uncertain and no

- 16 -

1135988_1

matter the outcome, appeals would be virtually assured.  This would add considerably to the expense and duration of the Litigation.

The legal issues presented are complex – proving scienter, causation, and damages – and would involve expert testimony, as discussed above.  The settlement will spare the litigants the significant delay, risk, and expense of continued litigation.  Many hours of the Court's time and resources have also been spared.  Moreover, even if the Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, which would further reduce its value.  The $8,200,000 settlement, at this juncture, results in an immediate and substantial tangible recovery, without the considerable risk, expense, and delay of summary judgment motions, trial, and post-trial litigation.  *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").  As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*, 688 F.2d at 624 ("'Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.'"); *Ellis*, 87 F.R.D. at 19 (finding that as a *quid pro quo* for not having to undergo the uncertainties and expenses of litigation, the plaintiffs must be willing to moderate the measure of their demands).

### E.    Lead Plaintiff Had Sufficient Information to Determine the Propriety of Settlement

The settlement comes after the close of fact discovery, and therefore the case had reached a stage where an intelligent evaluation of the strengths and weaknesses and the propriety of settlement could be made.  *See Officers for Justice*, 688 F.2d at 625; *Mego*, 213 F.3d at 458; *Zynga*, 2016 U.S. Dist. LEXIS 17196, *42.  As discussed above and in the Henssler Declaration, this Litigation has involved extensive

- 17 -

1  discovery, including the production of over seven million documents, the taking and

2  defending of 23 party, non-party and expert depositions, and the submission of several

3  expert reports.  Henssler Decl., ¶¶62-131.  The parties also participated in extensive

4  settlement negotiations, including an all-day face-to-face mediation session with

5  Judge Phillips in March 2015, where the parties' claims and defenses were fully

6  vetted.  Prior to this mediation session, the parties submitted to Judge Phillips and

7  exchanged detailed mediation statements which further highlighted the factual and

8  legal issues in dispute.

9          There can be no question that the parties reached an agreement to settle the

10  Litigation at a point when they had a highly informed understanding of the legal and

11  factual issues surrounding the case.  *See Mego*, 213 F.3d at 459; *DIRECTV*, 221

12  F.R.D. at 527.  Having sufficient information to properly evaluate the case, Lead

13  Plaintiff agreed to settle the Litigation on terms highly favorable to the Class under the

14  circumstances present here.

15     **F.    The Recommendations of Experienced Counsel After**
           **Extensive Litigation and Arm's-Length Settlement**
16         **Negotiations Favor the Approval of the Settlement**

17          As the Ninth Circuit observed in *Rodriquez*, "[t]his circuit has long deferred to

18  the private consensual decision of the parties" and their counsel in settling an action.

19  563 F.3d at 965.  Courts have recognized that "'"[g]reat weight" is accorded to the

20  recommendation of counsel, who are most closely acquainted with the facts of the

21  underlying litigation.'"  *DIRECTV*, 221 F.R.D. at 528; *accord Omnivision*, 559 F.

22  Supp. 2d at 1043 ("'[t]he recommendations of plaintiffs' counsel should be given a

23  presumption of reasonableness'").

24          Lead Counsel has significant experience in securities and other complex class

25  action litigation and has negotiated numerous other substantial class action settlements

26  throughout the country.  *See* www.rgrdlaw.com.  Having carefully considered and

27  evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims

28  asserted against Defendants, the likelihood of prevailing on these claims, the risk,

- 18 -

1135988_1

1   expense, and duration of continued litigation, including collectability of a judgment,

2   and the likely appeals and subsequent proceedings necessary if Lead Plaintiff did

3   prevail against Defendants at trial, Lead Counsel has concluded that the settlement is a

4   very good result for the Class.  Here, "[t]here is nothing to counter the presumption

5   that Lead Counsel's recommendation is reasonable."  *Omnivision*, 559 F. Supp. 2d at

6   1043.  Importantly, the Lead Plaintiff, who was active in the Litigation, authorized

7   counsel to settle it and supports the reasonableness of the settlement.  *See* Bermuda

8   Decl., ¶4.

9           **G.      Reaction of the Class Supports Approval of the Settlement**

10          Pursuant to the Notice Order, the Court-approved Notice was mailed to

11  potential Class Members who could be identified with reasonable effort and a

12  summary notice was published once in *Investor's Business Daily*, and transmitted over

13  the *Business Wire*.[7]  These documents were also posted on the settlement-specific

14  website established by the Claims Administrator.  Sylvester Decl., ¶13.  The Notice

15  advised the Class of the terms of the settlement and the Plan of Allocation as well as

16  the procedure and deadline for filing objections.  As of April 12, 2016, more than

17  25,200 Notices had been mailed to potential Class Members and nominees.  While the

18  objection deadline, May 2, 2016, has not yet passed, not a single Class Member has

19  filed an objection to the settlement, the Plan of Allocation, or counsel's request for an

20  award of attorneys' fees and expenses.

21          While not conclusive, "the fact that the overwhelming majority of the class

22  willingly approved the offer and stayed in the class presents at least some objective

23  positive commentary as to its fairness."  *Hanlon*, 150 F.3d at 1027.  Of course, "[t]he

24  fact that some class members object to the Settlement does not by itself prevent the

25  court from approving the agreement."  *Brotherton v. Cleveland*, 141 F. Supp. 2d 894,

26  906 (S.D. Ohio 2001).  "'A certain number of . . . objections are to be expected in a

27

28  ---
    [7]   *See* Sylvester Decl., ¶¶4-11, 15.

1   class action.'" *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533

2   (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia,*

3   *L.L.C.*, 636 F.3d 235 (6th Cir. 2011).  Moreover, "a relatively small number of class

4   members who object is an indication of a settlement's fairness."  2 Herbert Newberg

5   & Alba Conte, *Newberg on Class Actions* §11.48 (3d ed. 1992).  *See also In re Rite*

6   *Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("such a low level of objection

7   is a 'rare phenomenon'").[8]

8        Each of the above factors fully supports a finding that the settlement is fair,

9   reasonable, and adequate, and therefore deserves this Court's final approval.

10  **V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

11       Lead Plaintiff also seeks approval of the Plan of Allocation of the settlement

12  proceeds.  The Plan of Allocation is set forth in full in the Notice mailed to potential

13  Class Members.

14       Assessment of a plan of allocation of settlement proceeds in a class action under

15  Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of

16  review applicable to the settlement as a whole – the plan must be fair and reasonable.  *See*

17  *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *50; *Class Plaintiffs*, 955 F.2d at 1284.  District

18  courts enjoy "broad supervisory powers over the administration of class-action

19  settlements to allocate the proceeds among the claiming class members . . . equitably."

20  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust*

21  *Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  An allocation formula need only

22  have a reasonable, rational basis, particularly if recommended by "experienced and

23  competent" class counsel.  *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *In re*

24  *Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

25       The Plan of Allocation provides an equitable basis to allocate the Net

26  Settlement Fund among all Class Members who submit an acceptable Proof of Claim.

27  ---

    [8]   In accordance with the Notice Order, Lead Plaintiff will respond to any objections

28  on or before July 1, 2016.

1   Here, the Plan of Allocation was developed by Lead Counsel with the assistance of its

2   economic consultant and reflects an assessment of the damages that could have been

3   recovered at trial under the theories asserted in the case by Lead Plaintiff.[9]   Henssler

4   Decl., ¶¶155-159.  As a result, the Plan of Allocation will result in a fair distribution

5   of the available proceeds among Class Members who submit valid claims and

6   therefore should be approved.  To date, there has been no objection to the Plan of

7   Allocation.

8   **VI.    CONCLUSION**

9          The settlement here is a highly favorable result, given the presence of skilled

10  counsel for all parties, the extensive settlement negotiations, the considerable risk,

11  expense and delay if the Litigation were to continue, the certain and immediate benefit

12  of the settlement to Members of the Class, the lack of opposition mounted by Class

13  Members, as well as Powerwave's bankruptcy and the impact that would have on

14  collecting on a judgment that was upheld after appeals.  In addition, the Plan of

15  Allocation tracks the theory of damages asserted in the case and is necessarily fair,

16  reasonable and adequate.  Therefore, Lead Plaintiff respectfully requests that this

17  Court approve the settlement of this Litigation and the Plan of Allocation as fair,

18  reasonable and adequate.

19

20

21

22

23

---

24  [9]    *See, e.g., Zynga*, 2016 U.S. Dist. LEXIS 17196, at *50-*51; *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, at *15 (N.D.

25  Cal. Nov. 26, 2007) (recognizing that settlement proceeds may be distributed in accordance with strengths and weaknesses in a case) (collecting cases) (citing

26  *Omnivision*, 559 F. Supp. 2d at 1045 ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on

27  the merits.")); *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *38 (Concluding as fair, a plan of allocation which "'makes interclass distinctions based upon, *inter alia*,

28  the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'").

1 | DATED:  April 15, 2016

Respectfully submitted,

ROBBINS GELLER RUDMAN
   & DOWD LLP
DARREN J. ROBBINS
ELLEN GUSIKOFF STEWART
ROBERT R. HENSSLER JR.
X. JAY ALVAREZ
RYAN A. LLORENS
MATTHEW I. ALPERT


                    s/ Robert R. Henssler Jr.
               ROBERT R. HENSSLER JR.

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiff

- 22 -

1135988_1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 15, 2016.

s/ Robert R. Henssler Jr.
ROBERT R. HENSSLER JR.

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  bhenssler@rgrdlaw.com

# Mailing Information for a Case 8:12-cv-00222-CJC-JPR Pawel I Kmiec v. Powerwave Technologies Inc et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Matthew Isaac Alpert**
  malpert@rgrdlaw.com,kathyj@rgrdlaw.com,e_file_sd@rgrdlaw.com,ldeem@rgrdlaw.com

- **X Jay Alvarez**
  jaya@rgrdlaw.com

- **Seth A Aronson**
  saronson@omm.com,LitigationCalendar@omm.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com

- **Marc L Godino**
  mgodino@glancylaw.com,info@glancylaw.com

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Robert Russell Henssler , Jr**
  bhenssler@rgrdlaw.com,e_file_sd@rgrdlaw.com,lmix@rgrdlaw.com

- **Alec Johnson**
  aljohnson@omm.com,skemp@omm.com

- **Ryan A Llorens**
  ryanl@rgrdlaw.com

- **Tricia L McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Eric Niehaus**
  ericn@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Darren J Robbins**
  e_file_sd@rgrdlaw.com

- **Samuel H Rudman**
  srudman@rgrdlaw.com

- **Abby F Rudzin**
  arudzin@omm.com

- **David C Walton**
  davew@rgrdlaw.com,stremblay@rgrdlaw.com,jillk@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)